Milton Shalleck, J.
The facts in this ease are simple. The legal question is uncomplicated. The problem is to arrive at the answer. For there is novelty here; and analysis can stem, not from direct precedent, but from trends indicated by the few' cases having applicability.
Prior to a 1963 legislative change in subdivision 1 of section 177 of the Code :of Criminal Procedure, there could be no reason to write. It would suffice to cite as decisive People v. Dreares (15 A D 2d 204, affd. 11 N Y 2d 906)., But the District Attorney says that that holding is no longer conclusive. We shall see.
THE FACTS '
Defendant was arrested on a charge of disorderly conduct— an offense under subdivision 2 of section 722 of the Penal Law. After the arrest he was searched. Contraband was found on his person. He was then charged with its illegal possession — a misdemeanor under section 1747-d of the Penal Law. On the trial of the first of these charges, defendant was acquitted. The trial of the, second charge was begun before me. The arresting officer having been sworn, defendant’s counsel moved to suppress the evidence (the contraband found by the officer after the, arrest for disorderly conduct) and to dismiss the second charge under Dreares (supra). ,
THE LEGAL QUESTION
Did the change made by the Legislature in 1963 to section 177 of the Code of Criminal Procedure alter "the import and inténdment of the holding in Dreares? For up to then an acquittal of the charge involved in the original arrest ipso facto invalidated the search which revealed the unrelated basis of the second charge.
THE ÁNSWEB.
Section 177. of the ‘Code of Criminal Procedure, is the enabling, legislation for arrests by peace officers. It was first enacted, in 1881 (ch. 442) and, except for additions in 1958 and 1960, not here' pertinent, it remained unamended until 1963 (ch. 580). *779 Just prior to that came the Dreares case (decided by the Court of Appeals on April 26, 1962). The District Attorney claims that the principal goal of the amendment was “to overcome the holding of ” that case and secondarily “ to aid police officers in the performance of their duties after the decision of the Supreme Court of the United States in Mapp v. Ohio 367 U. S. 643.”
Dreares was arrested in the New York City subway on a charge of loitering — an offense under subdivision 2 of section 1990-a of the Penal Law. He forcibly resisted the arrest. In so doing he inflicted a minor injury to the arresting officer. He was thereupon charged with the original offense and assault in the third degree — a misdemeanor under section 244 of the Penal Law. He was acquitted of the offense, which was tried first. Later, by separate trial, he was convicted of the misdemeanor assault charge. The Appellate Division, First Department, reversed the conviction. That decision was affirmed by the Court of Appeals without opinion.
Judge Breitel, writing below, stated that the acquittal of the loitering charge raised “the issue as to the lawfulness of the arrest in which defendant forcibly resisted the transit officers * * * Defendant’s prior acquittal of the crime for which he was arrested consequently established the arrest to have been unlawful, and he was therefore entitled to resist such an arrest with reasonable force (People v. Cherry, 307 N. Y. 308).” (People v. Dreares, 15 A D 2d 204, 206, supra.)
When this ruling was made and later affirmed, subdivision 1 of section 177 of the Code of Criminal Procedure read in part: ‘ ‘ A peace officer may, without a warrant, arrest a person, 1. For a crime, committed or attempted in his presence ”. The 1963 amendment added “ or where a police officer * ' * * has reasonable grounds for believing that a crime is being committed in his presence.” The point made by the District Attorney is that Judge Bbeitbl referred to the loitering charge as a “ crime ” and the amendment also refers to “ crime ”. Therefore if the “ offense ” of disorderly conduct here is a “ crime ” within the purview of the amendment, the acquittal is not “ determinative ” of the lawfulness of the original arrest.
Deferentially this argument strains contextual interpretation. While assuming the purpose of the amendment argued by the District Attorney, ‘1 with the existing methods of legislation, there is very little security that the final expression of the lawmaker’s intention will be apt, adequate or even consistent * * * [and the Court’s duty is to] develop and mould it as interpreters [and not] create it as legislators ” (Sir Frederick *780 Pollock’s lecture to the law faculty in the University of London in 1929 entitled 44 Judicial Caution and Valour 45 L. Q. Eev. 293).
The use of the word 44 crime ” by Judge Breitel in Dreares is generic. That he referred to an offense (which it is) as “ crime ” indicates that fact. The statute, too, contemplates the same general category in subdivision 1. For no act or omission is a crime unless some statute makes it so (Penal Law, § 22; People v. Knapp, 206 N. Y. 373, 380). There are statutes which ascribe to certain actions a mild term like 44 offense ”, 44 infraction ” or 44 violation ’ ’ in the same context of the word 4 4 unlawful ” which generally connotes a penal act. Not all of these are crimes in a sophisticated sense. A crime is defined as “ an act or omission forbidden by law, and punishable upon conviction by:” six categories of punishment (Penal Law, § 2). The two divisions of crimes are: a felony (punishable by death or a State prison imprisonment) 44 Any other crime [being] a 4 misdemeanor ’ ’ ’. From the latter, for instance, are excluded acts defined as 44 infractions ” by the Vehicle and Traffic and Conservation Laws; for otherwise even a parking violation might be a misdemeanor (see Matter of Fake v. Macduff, 116 N. Y. S. 2d 597, revd. on other grounds 281 App. Div. 630; People v. Reson, 249 App. Div. 54). The nature of punishment determines the grade of 44 crime ” (People v. Lyon, 99 N. Y. 210, 216-217, 223-224; People v. Hughes, 137 N. Y. 29, 34; People v. Kaminsky, 208 N. Y. 389) and this principle must be strictly adhered to (People ex rel. Cosgriff v. Craig, 195 N. Y. 190, 196).
Here there is no question that the alleged ‘ 4 crime ’ ’ is only an 44 offense ”. Section 722 of the Penal Law specifically so states under its heading of 44 Disorderly conduct”: “ Any person who * * * commits any of the following acts shall be deemed to have committed the offense of disorderly conduct” (italics added). Subdivision 1 of section 177 of the Penal Law and reference to 4 ‘ crime ’ ’ in Dreares cannot be tortured in construction to obfuscate the obvious distinction so clearly defined. It should not be confused so as to eradicate the line of demarcation between substance and procedure. 4 4 An offense is in the nature of a crime and the same rules of law and procedure are to be followed as where the defendant is charged with a crime ” (People v. Gilbert, 12 N. Y. S. 2d 632, 635). 44 They are tried like misdemeanors * * * and to them, as to 4 offenses ’, there should be applicable the criminal-law rules of presumption of innocence and necessity of proof of guilt beyond a reasonable doubt ” (People v. Hildebrandt, 308 N. Y. 397, 400).
*781 The “offense”, then, of disorderly conduct, remains simply and solely that by statute; and no attempt to convert it. semantically into a more serious unlawful act so as to encompass the sanctions of good police work, though unconstitutional behavior of law enforcement, will succeed.
As for interference with proper law enforcement by reason of the exclusionary principles of such cases as Mapp v. Ohio (367 U. S. 643 et seq.), the current error in thinking, both in lay and legal circles, is that the criminal courts should be an adjunct of law-enforcing agencies — props to substitute for constitutional inadequacies or bolster errant officers’ inefficiencies and, sometimes, overzealousness. This is to be regretted. Courts are not fostered to take sides. If impartiality is to be taken from them by reason of public pressure engendered by publicity given to a small percentage of newsworthy cases, then evil days are upon us. No one can thus be protected; and the presumption of innocence, so jealously to be guarded, will be diluted beyond recognition. And Mapp itself did not materially affect results of law enforcement. (Sobel, Crime in New York City, Brooklyn L. Rev., Dec., 1963.) Nor should any court decision discourage the laudatory police work which I openly acknowledge. The difficulties encountered by the police are neither caused nor condoned by courts. It is just the way of democracy trying desperately to weigh the values of the individual in relation to the people generally.
A court must interpret the laws as they are found, despite its negative belief in the efficacy or value of the legislation or its basic disagreement with that court’s standards. A court must have courage to do so, even if the shading is in the penumbra of different thought. Conformation is not an end in itself. All judicial thinking and pronouncement, however, must be attuned to the times. More succinctly it has been said that:
“ The duty of the Court is to keep the rules of law in harmony with the enlightened common sense of the nation. Such a duty, being put upon fallible men, cannot be performed with invariable and equal success. It is a matter of judgment, knowledge of the world, traditional or self-acquired bent of opinion, and perhaps above all of temperament. Caution and valour are both needed for fruitful constructive interpretation of legal principles. The Court should be even, valiant to override the merely technical difficulties of professional thinking, and also current opinions having some show of authority, in search for a solution which will be acceptable and in a general way intelligible to reasonable citizens, or the class of them whom the decision concerns. Judi *782 cial valour of this kind is-in no way akin to headstrong ambition or love of innovation for its own -sake. Bather it is the 1 sad wise valour ’ which an excellent poet recommended for the conduct of life, using ‘ sad ’ to denote not a depressed but a serious and resolute mood, a meaning still current in his time.
“Public opinion itself is not infallible.” (Pollock, ibid., p. 295.)
It is reasoning like this which evokes admiration for Judge Sobel whose independence in his opinion in People v. Roach (44 Misc 2d 40) engenders serious evaluation of the District Attorney’s contentions. While Judge Sobel ruled (p. 41) that “ an acquittal of the ( original ’ crime does not necessarily invalidate the search which uncovered the ‘ related ’ crime”, unlike the principle put forth by the District Attorney, he did ‘ ‘ not find ” Dreares “ inconsistent with ” his ruling. Further, as to the impact of the original offense being a “ crime ”, Judge Sobel said (p. 47): “ Thus, the court held that even if the arrest had been for a felony on abundant probable cause and with statutory right of arrest (§ 177, subd. 4) the finding of not guilty ipso facto established the ‘ right to resist ’. This is not, it seems to me, inconsistent with my holding ”.
His ‘ ‘ misgivings ’ ’ about deciding as he did were constrained by ‘1 collateral issues of ‘ pretex ’ arrests and ‘ exploratory ’ searches ”, And these worry me, too.
For here we do not have any evidence on which the original disorderly conduct arrest was made. If it were made on a pretext to search (People v. Scalegnio, 14 N Y 2d 744) or if it was to search for evidence to justify the arrest (People v. Loria, 10 N Y 2d 368, 373; United States v. Di Re, 332 U. S. 581, 595) or for evidence of another crime (Jones v. United States, 357 U. S. 493; United States v. Harris, 321 F. 2d 739) the search was no longer incidental to a primary purpose to arrest. A search warrant would then be imperative (People v. Shelton, 60 Cal. 2d 740 ; People v. Haven, 59 Cal. 2d 713).
The memorandum submitted by the City of New York in favor of the 1963 amendment to section 177 of the Code of Criminal Procedure (N. Y. Legis. Ann., 1963, p. 70) is directed more to the fear of pecuniary reprisals if the arresting officer should guess wrong, it seems to me, than to the sought change to include “ offenses ” within the meaning of “ crimes ”. The same, in lesser degree, would apply as well to the G-overnor’s memorandum of approval (N. Y, Legis. Ann., 1963, p. 458). And the other cases on which the District Attorney attempts to bottom his claim that “ offenses ” are included in “ crimes ” for purposes of the amendment’s interpretation (viz.: Squadrito v. *783 Griebsch, 1 N Y 2d 471; People v. Glennon, 175 N. Y. 45; People v. Marendi, 213 N. Y. 600; People v. Phillips, 284 N. Y. 235; People v. Gilbert, 12 N. Y. S. 2d 632, 635, supra) hardly do so. At best their effect is to impel a court to treat offenses procedurally but not substantively as misdemeanors.
Roach lends color of credence to the prosecutor’s arguments. But they fall short. Other cases decided since the amendment tend to destroy their effectiveness. People v. Ross (19 A D 2d 803) involved an original misdemeanor charge of injury to property, later held to be an invalid arrest. Second and third charges of assault in the third degree and possession of drugs, both misdemeanors, were subsequently lodged. Dreares dictated a dismissal of the second and the third charges because they were not incidental to a lawful arrest. People v. Ferrara (N. Y. L. J., Nov. 18, 1963, p. 16, col. 5 [Supreme Ct., Kings County, Helfand, J.]) involved a disorderly conduct offense (Penal Law, § 722, subd. 11) arrest followed by an alleged abandonment of contraband for which defendant was charged with a felony. Defendant was thereafter acquitted of the offense. Citing Dreares, Ross and People v. Laurell (N. Y. L, J., Oct. 14, 1963, p. 17, col. 1 [Supreme Ct., N. Y. County, Caeney, J.]) the felony charge was held to be dismissible. Finally, there is a ease in which I sat as one of a three-Judge Bench which found a defendant guilty of assault after an acquittal for disorderly conduct. It was People v. Allen (see 15 N Y 2d 558). The Appellate Term had affirmed, but the Court of Appeals reversed on the basis of Dreares. My recollection is that the principle of Breares was not advanced at the trial. Nevertheless the divided Court of Appeals dismissed the information.
In principle I find no difference between an assault and possession of narcotic instrumentalities as second unrelated charges.
I am not disturbed by the possibility of a hearing to determine the basis of the original acquittal. That would be no more administratively cumbersome than the myriad of Huntley hearings now going on. (People v. Huntley, 15 N Y 2d 72.) It is just that I believe that the finality of the fact of acquittal is sufficient and the amendment does not alter it.
“ The civilized standards of fundamental fairness developed over the years in this area must be zealously guarded by the trial and appellate courts if the guarantees of the Bill of Bights are to be kept meaningful and not permitted to evaporate through silent abrogation”. (Kaufman, J., in United States v Como, 340 F. 2d 891, 894-895.)
*784 I therefore find that the search herein was improper as the “ fruits of the poison tree ” (Wong Sun v. United States, 371 U. S. 471). The motion to suppress is granted, the information (complaint) is dismissed and defendant is discharged.