Hyman Barshay, J.
The defendant moved for an order ‘ ‘ declaring unreasonable illegal and void the search and seizure (without a warrant) made at the garage attached to premises 972 East 105 Street in the Borough of Brooklyn on April 23, 1966. ” At a hearing held on the 1st of February, 1967, Detective Gottlieb of the Safe and Loft Squad testified that, pursuant to a search warrant issued by a Criminal Court Judge authorizing a search at premises of the defendant, 1375 East 105th Street-in the Borough of Brooklyn, for a stolen savings bond belonging to Michael Contrad, he entered the afore-mentioned premises, and during the search for the said savings bond, he found three delivery slips and/or tags, one of which contained the words “Furniture Fleet Delivery, Department No. 090, Check No. 8709-30, sent to W. Finley, 160 West End Avenue, Manhattan. Route 8 (16),” on the bottom of which was written or printed “ Macy’s 314 Route 16 ” and dated “ 2-19 ”; the second was for a delivery to H. Dan, 160 West End Avenue; the third is to A. Feinberg, 160 West End Avenue; and in addition, a slip of paper upon which was written “Received from Harriet Schwartz one month’s rent from March 18 to April 18, $15 ” for a garage at 972 East 105 Street, signed with the name “ Bordock ”. In addition to the aforesaid, he found in the *36 basement of the defendant’s home two padlocks on which was stamped 1‘ United Parcel ’ ’. Keys were in the padlocks. Pie found the savings bond described in the search warrant and placed the defendant under arrest.
Before April 23,1966, the day of the search of the defendant’s premises, he had information that on February 19 a truck of Furniture Fleet Delivery containing a load of furniture from Macy’s, was missing in the 108th Precinct in Queens County. He received that information from the security office of the United Parcel Company which used Furniture Fleet Delivery for transporting furniture to Macy’s customers. Combining this information and the exhibits he found, he proceeded to premises 972 East 1.05 Street. He spoke to a Mrs. Bordock whose name was signed on the rent receipt afore-mentioned; he identified himself and asked her if it was her receipt and whether she rented a garage to Harriet Schwartz; to both questions she responded in the affirmative. The garage was attached to the rear of her house and entrance could be had through her house or through the driveway. It was a two-car garage with one door; it was not partitioned. He asked her if she would open the garage door and she said she would and did. Mrs Bordock told him she rented the garage to the defendant in February for a rental of $15 for one month, for the purpose of storing an automobile; thereafter she asked the defendant to vacate the garage because she saw in the garage furniture and other items and no automobile. When the garage door was opened by Mrs. Bordock, he saw items of property containing tags with the name “ Macy’s ” on it, “ Furniture Fleet ” and names of consignees of the furniture from Macy’s and the addresses of the consignees. The tags were similar to the three he found in defendant’s house. He then returned to 1375 East Í05 Street, where the defendant was in custody, and charged her with receiving stolen property.
The matter concerning the stolen savings bond was presented to the Grand Jury, but there was no indictment.
Mrs. Bordock testified that she resides at 972 East 105 Street. a two-family house with a two-car garage attached to the back of the house; it had an overhead door; it necessitated upward pulling to open it; there was no partition; when the door is open, the entire inside of the garage is exposed. She rented half the garage to defendant; the other half she retained for her own use; defendant said she wanted it for storage of a car; the rental was for one month; in March she told the defendant she would like her to move out beeausé she had a lot of stuff in there, like boxes and a rug; she wanted the garage *37 for her own use; the defendant asked and got another month’s extension; on the 22nd of April, she told the defendant that she would not take another month’s rent, because she wanted her to move out; she never saw the defendant put anything in the garage; on April 23, members of the Police Department showed her a receipt which she acknowledged to be hers; it was a receipt for rent from March to April 18; the police requested her to open the garage door; she acceded to their request.
On the evidence adduced I find that Detective Gottlieb was lawfully in the defendant’s home on April 23, 1966 at 1375 East 105 Street pursuant to the authority of a valid search warrant. The search for the stolen United States Savings Bond, specifically described in the warrant, was reasonable and lawful. The bond was uncovered, seized and the defendant was arrested for its unlawful possession. During the search for the bond, the items complained of were found.
The defendant contends that the search warrant limited the search to “ a stolen savings bond” and anything discovered, during the search, of an unrelated crime must be disregarded. In that conclusion he errs.
In People v. Roach (44 Misc 2d 40, 41, affd. 26 A D 2d 561) the court stated: ‘ ‘ The general principle is that if the ‘ original ’ search is reasonable, any fruits, instrumentalities or contraband of an ‘ unrelated ’ crime observed or uncovered in the course of that reasonable search may reasonably be seized, provided a contemporaneous arrest (State v. Taylor, 81 N. J. Super. 296, 308-309) is then and there made for the 1 unrelated ’ crime.” Under all of the attendant circumstances and the evidence adduced, I find that this principle is applicable here.
Defendant’s contention that the officer was bound “by the four corners ” of the search warrant and could only seize the article described therein is without merit. Her reliance upon People v. Carroll (38 Misc 2d 630) which cites Marron v. United States (275 U. S. 192) is misplaced. In Marrón, the Supreme Court ruled (p. 196) that “the requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. ’ ’ The court held that the seizure of a ledger and certain bills, not described in the search warrant, was not authorized by the Avarrant. However, the court found that they AArere laAvfully seized as an incident of the arrest of the defendant (Marron v. United States, supra, p. 199).
*38 So, too, in the ease before me, while the seizure of the padlocks, rent receipt and delivery slips was not authorized by the search warrant, they were lawfully seized as an incident of the arrest of the defendant (Marron v. United States, supra, pp. 198, 199).
Defendant claims the officer did not have probable cause to search the garage. The evidence is uncontroverted that prior to defendant’s arrest the officer was informed of the larceny of a truck, with a load of furniture, on February 19, 1966, belonging to Fleet Furniture Delivery used by United Parcel to make deliveries to Macy’s customers. Having found in defendant’s house two United Parcel padlocks and three delivery slips of Fleet Furniture Delivery dated February 19, the officer had reasonable cause for believing that the defendant committed the felony of which he had previously been informed. Under these circumstances, in the proper performance of his duties, the officer not only had the right, but the duty to follow up the lead with respect to the garage, the address of which was in the rent receipt he found. This information, obtained during the course of the “ original ” search, was, therefore, not “ fruit ” of a “ poisoned tree.” It developed that this is a two-car garage, only half of which was rented to the defendant. The other half was retained by the owner for her own use. There is no partition separating each half; a common door opens the entire garage. The owner voluntarily opened the garage door with her key and there in open view were furniture, rugs and other items, some of which bore Macy’s tags.
The question to be. determined is whether the owner’s consent to enter the garage is operable against the defendant. In United States v. Sferas (210 F. 2d 69, 74 [C. A. 7th]) the court stated: “ the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search ” (see, also, Driskill v. United States, 281 F. 146 [C. A. 9th]).
Here the evidence established that the garage was not rented to the defendant for her sole and exclusive use or occupation, but was shared with the owner who voluntarily opened it with her own key. The defendant’s consent was, therefore, not required.
The officer lawfully entered the garage, where open to his view was merchandise which was obviously • stolen. He did not conduct a search but seized fruits of a crime which he was previously informed had been committed.
In People v. Manzi (38 Misc 2d 114, 117, affd. 21 A D 2d 57) the court held that: ‘ ‘ The Constitution forbids only unrea *39 sonable searches. If recognizable contraband or fruits or instrumentalities in open view in the street or in a place- lawfully entered by the police without any element of trespass or fraudulent invasion of the rights of citizens are found by the police, this is not a search but a seizure, and nothing in the Constitution inhibits the seizure of property, the possession of which constitutes a crime.” (Italics ours.)
Police officers are not required to shut their eyes to readily visible evidence of other crimes (United States v. Charles, 8 F. 2d 302). Under the attendant circumstances, “ to hold the officer guilty of an ‘ unreasonable ’ search and seizure, in violation of the Fourth Amendment, would be to make of the constitutional provision a fetish, instead of a shield against the invasion of personal and property rights.” (Driskill v. United States, 281 F. 146,148, supra.)
On the evidence adduced, I find that the seizure at the garage was reasonable and not in violation of defendant’s constitutional rights.
The motion to suppress is therefore denied.