Oscar Murov, J.
This is a hearing on a motion to suppress, conducted pursuant to the procedure set forth in CPL 710.60 (subd. 4). Defendants have been indicted for robbery in the first degree and for grand larceny in the third degree and allege to be aggrieved ¡by the improper and unlawful acquisition of evidence. Suppression is now sought on the grounds that such evidence consists of: (a) tangible property obtained by means of an unlawful search and seizure, (b) a record -of potential testimony reciting or describing statement involuntarily made, and (c) potential testimony identifying the defendant, John Dellorfano, as a person ¡who committed the offense charged, which testimony would not be admissible upon trial of the charge owing to an improperly made previous identification (CPL 710.20, subds. 1, 3, 5).
The following shall constitute the court’s findings of fact:
On or about 4:15 in the morning on -Saturday, March 17, 1973, Patrolman Kozens of the .Suffolk County Police Department, 6th Precinct, while alone and on duty in a sector car, received *603 a radio-alarm which stated that a gas station had been robbed and which described the perpetrator as having black hair and mustache and wearing a black leather jacket and as having fled in a green Ford Falcon with large circular tailights. (Defendants have introduced into evidence a certified record of an alarm at variance with the officer’s testimony which describes only a white male suspect with mustache, but the court finds that the alarm Kozens heard on his radio was substantially the same as he described.)
The officer observed a vehicle fitting the broadcast description proceeding along Route 347 on a northeasterly course and away from the general vicinity of the robbery. After stopping the vehicle he observed three occupants. While remaining near his car with the headlamps played in the direction of the suspect vehicle and with gun drawn and held at his side, he ordered the occupants to exit and to place their hands on the vehicle’s trunk. He saw that the defendant, Dellorfano was wearing a black leather jacket, and he radioed for assistance and was promptly joined at the scene by several patrol cars attached to an adjacent precinct. They departed soon thereafter upon receiving a radio advisory that another suspect fitting the alarm description had been apprehended nearby. However, one officer remained behind to render to Patrolman Kozens any needed assistance.
Patrolman Kozens then approached the suspect vehicle on the driver’s side and saw that the door was open, reached into the vehicle to turn off the ignition and, in so doing, observed one semi-automatic Beretta and one revolver, two ski masks, and some nylon stockings, resting on the front seat.
The other patrol cars then returned and the defendant Kirk was handcuffed and placed in Kozens’ police vehicle in the front passenger seat, and transported to the 4th precinct. The cosuspects were taken there by other officers. Kirk was advised by Patrolman Kozens that he was under arrest and of his constitutional rights for the first time while seated in the patrol car. The other defendants were likewise advised by Kozens of their constitutional rights when he next saw them at the precinct. Defendant Kirk requested permission to make a telephone call and spoke to some person he addressed as “ Mom ”. Patrolman Kozens asserts that he overheard some of Kirk’s words but did not hear mention of the word “ attorney ”. Kirk did, in fact, request “ Mom ” to bring an attorney.
Detective G-rasso, who took charge of the investigation, arrived at the precinct at about 6:15 a.m. A lineup was conducted *604 under the direction of Detective Grasso at about 6:30 a.m., wherein defendant Dellorfano was caused to stand in a room .with three other subjects while the victim viewed all four subjects through a one-way mirror, and identified Dellorfano. The victim viewed the same subjects, rearranged, five minutes later and identified Dellorfano once again.
As to the identification of defendant Dellorfano, the victim indicates only that he was admonished to be careful not to err in the identification and was given no further instructions. He did testify also that each subject in the lineup had black hair, black mustache and held a number in his hand, but that Dellorfano appeared to be lighter in weight than the others.
Detective Grasso spoke to Kirk for the first time at about 10:00 a.m., first advising him of his Miranda rights and subsequently in an interrogation in which two officers from the robbery squad participated. Kirk made a statement of an incriminating nature, which statement is now sought by him to be suppressed. Defendant Dellorfano, indicating no reluctance to communicate with the officers, also made a statement of an incriminating nature, which is likewise sought to be suppressed.
Kirk’s attorney arrived later at about 11:00 a.m. and was told by Kirk that he had not made any statement. His attorney thereupon instructed the police that his client was not to be questioned but was advised in return that Kirk had, in fact, made an incriminating statement one hour earlier. Kirk’s attorney had been waiting in vain at the First District Court expecting to meet his client at the arraignment and did not proceed to the precinct house where Kirk was being held until he learned that there would be no further arraignments that day because of the onset of the weekend.
Defendants contend that the confessions and/or admissions must be suppressed on the ground that they were given after they had requested counsel and during a period when their arraignment was unreasonably delayed for the purpose of interrogation ; that evidence of the lineup identification must be suppressed on the ground that Dellorfano was denied the right to have counsel present at the lineup and also for the reason that the proceeding was improper as unduly suggestive; that the weapons and garments should be suppressed as evidence because they were obtained by means of an unlawful search and seizure in that said search was conducted without benefit of a search warrant or consent and was not incidental to a lawful arrest since (a) the search was accomplished before the arrest, and (b) probable cause to arrest was not present because the arrest was *605 based solely upon an uncorroborated alarm from an identified source.
Tbe following shall constitute the court’s finding of law:
In respect to the Miranda Warnings (Miranda v. Arizona, 384 U. S. 436), whether the proper instruction was given is a question of fact. The police officer has testified that he advised the defendants they had a right to an attorney and that no statements need be made. He states that the full and complete statement of their constitutional rights was given them and stated that he advised defendants by reading from the card.
“ Miranda holds that there is no obligation on a suspect, in the first instance to request counsel. He must be advised of his right to counsel, and his failure to request counsel after the warnings, does not constitute a waiver of his constitutional right to the aid of counsel. ‘ No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings . . . have been given.’ 384 U. S. at 470.” (Ringel, Searches and Seizures Arrests and Confessions, § 45, p. 64.)
The right to remain silent and to counsel may be waived if the waiver is “ made voluntarily, knowingly, and intelligently ”, •but the burden of establishing a waiver is on the prosecution. A waiver of a constitutional right .will not be lightly inferred (Johnson v. Zerbst, 304 U. S. 458). “ a heavy burden rests on the government, to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.” (Miranda v. Arizona, supra, p. 475.) Mere silence by the accused after being advised of his rights does not create the presumption of a valid waiver. Nor is a valid waiver presumed simply from the fact that a confession was obtained. (Carnley v. Cochran, 369 U. S. 506.)
Defendants have shown that their statements were obtained approximately five hours after they were first placed under arrest. The inference against a waiver is eloquently stated in Miranda (p. 476): ‘ ‘ the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent .with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege.”
*606 The court finds in this case that although the Miranda warnings were properly given to the defendants, the People have failed to carry their burden of proving that the defendants effectively waived their right to remain silent.
Up until recently the courts have been divided as to whether or not a defendant was entitled to have counsel present at a pre-judicial proceeding lineup. (Paperno and Goldstein, Criminal Procedure in New York, Part I, § 75, p. 143.) The question has now been resolved by the .Supreme Court in Kirby v. Illinois (406 U. S. 682, 689), where it was made abundantly clear that Wade-Gilbert (388 U. S. (218, 263) applies only after a formal prosecution has been commenced “at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment ’ ’.
The court emphasized in Kirby that, unlike the doctrine of Miranda, which is based upon the Fifth and Fourteenth Amendment privileges against self incrimination, the Wade-Gilbert exclusionary rule is based upon the specific right of counsel contained in the Sixth and Fourteenth Amendments: Accordingly, Kirby has now established that Wade-Gilbert standards are mandatory only in the situations delineated in Kirby, i.e., only after the institution of formal charges. They are not mandatory unless the process has reached beyond an accusatory stage.
Dellorfano additionally urges that the unduly suggestive linup identification proceeding renders it invalid for identification purposes and that testimony based thereon ought to be suppressed. The court is unable to join with him in (this point of view. I find that those others who participated with him in the lineup were of the same general weight, height, age, color and race, and that there was nothing so suggestive in the manner in which the defendant was clothed such as would attract special attention or to make him stand out from the other persons present. Moreover, I find that Detective Grasso, in conducting the lineup proceeding, employed every reasonable safeguard to insure against a possible irreparable mistaken identification. I commend him highly.
We come now to that branch of the motion directed at the suppression of the weapons and garments taken from the front seat of the defendants’ vehicle. If the arrest was proper, the material taken is admissible :as the result of a reasonable search for weapons incident to an arrest. Defendants argue, however, (a) that the material was seized before arrest was effected, and *607 (b) no probable cause had been established .when based solely on the uncorroborated radio dispatch transmitted by an unidentified person (citing Whiteley v. Warden, 401 U. S. 560).
G-enerálly, the search must be contemporaneous with the arrest. How may “contemporaneous” be more precisely defined? In People v. Roach (44 Misc 2d 40, 43) there is a requirement that probable cause and statutory authority to arrest precede the arrest. More recently a Federal Circuit Court held that if there is probable cause to .arrest, an incident search within the. limits of Chimel v. California (395 U. S. 752), prior to the formal act of placing the defendant under arrest, is a lawful search. Once probable cause is present, it is immaterial if the incident search precedes or follows the arrest. (United States v. Riggs, 474 F. 2d 699.) . I find, as a matter of law, that the arrest occurred before the seizure and at the time when the defendants were ordered to exit the vehicle and to position themselves with their hands placed on their vehicle. Henry v. United States (361 U. S. 98) tells us that ,an arrest is normally deemed to occur automatically at the point when a suspect’s freedom of movement is curtailed, as indeed it was, in the instant case. (See, also, Paperno and Goldstein, Criminal Procedure in New York, Part I, § 1 [a].)
The sole remaining issue then is simply, “ Was there sufficient probable cause to effect defendants’ arrest?” It is the defendants ’ contention that the decision in WMteley disposes of this issue in their favor.
The arresting officer heard a radio alarm describing a robber (based upon a report by the victim) and the escape vehicle, moments before he observed ,a vehicle of the same description proceeding from the general direction of the site of the crime at a time of day when traffic was .sparse. He believed he had probable cause to stop the vehicle and, upon observing the defendant, Dellorfano, dressed and coiffed the same as was described in the alarm, he believed he had probable cause for the arrest.
In Chambers v. Maroney (399 U. S. 42, 52), where the police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat, there was probable cause to arrest the occupants of the station wagon that the officer stopped; just as obviously was there probable cause to search the car for guns and stolen money. (See, also, People v. LaBelle, 37 A D 2d 135.)
*608 Whiteley v. Warden (401 U. S. 560, supra) is instructive in this case. Therein, a police officer arrested the defendants on the basis of an all-State bulletin advising that the defendant and another were wanted for burglary. Prior to the broadcast, the Sheriff of the county where the offense occurred signed a complaint before the local Magistrate and secured a warrant. The defendants were arrested in another county. At the time of their arrest, the officers searched the interior of the car, where they found coins that corresponded with those taken in the robbery; and in the trunk, which they opened, they found burglary tools. It was later determined that probable cause had not been established for the issuance of a warrant, because sufficiently reliable information had not been presented to the Magistrate. The court concluded that, where the initial arrest warrant was not based on probable cause, any subsequent arrest based on that warrant was illegal. The court stated (pp. 568-569):“ the complaint on which the warrant issued here clearly could not support a finding of probable cause :by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer’s tip that Daley and Whiteley committed the crime. Therefore, petitioner’s arrest violated his constitutional rights under the Fourth and Fourteenth Amendments; the evidence secured as an incident thereto should have been excluded from his trial. ’ ’
The State contended in WMteley that the officers who made the arrest had probable cause on the basis of the radio dispatch to believe that the persons arrested were those described in the bulletin and that they might reasonably assume that probable cause for issuing the bulletin had been established. The Supreme 'Court responded to tMs argument by stating (p. 568): “We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly" police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.”
The teacMng of1 WMteley is that an officer, acting in good faith on the basis of a police dispatch, may assume at the time of the apprehension that probable cause has been established. .WMteley establishes that it is reasonable for an officer relying on such a dispatch to apprehend the subject of the dispatch. It states the legal justification for the police officer making the intrusion and being at the site of what may later be determined to be an illegal arrest. (See, also, People v. Maize, 32 A D 2d 1031.)
*609 If defendants can prevail in their contention that the arrest was unsupported by probable cause, then the arrest was illegal. But the question remains under the circumstances herein, whether the guns and garments should be received in evidence. The court would then conclude that the seizure was not the result of an illegal search, but was the result of a “ plain view ” inspection by an officer who had the legal justification to be where he was at the time of its sighting.
Coolidge v. New Hampshire (403 U. S. 443) remains the principal explication of the “ plain view ” doctrine. Goolidge reiterates the (well-established rule that, under certain circumstances, the police may seize evidence in1 ‘ plain view ’ ’ without a warrant. After a discussion of numerous “ plain view ” cases, Goolidge recites (p. 466): “ What the £ plain view ’ cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful, arrest, or some other legitimate reason for being present unconnected with a search directed against the accused — and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the ‘ plain view ’ doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.” (Emphasis supplied.)
Following the assumption that the arrest was illegal, it is obvious that under Whiteley and the long series of cases stemming in the Federal jurisdiction from Mapp v. Ohio (367 U. S. 643), a “ search ” would be unjustified and any evidence seized would have to be suppressed at trial. But it has been held that a seizure following a “ plain view ” is not the product of a “search”.. i
In People v. Merola (30 A D 2d 963) the court pointed out that no search in the constitutional sense takes place when a police officer observes objects from a place where he has a right to be and seizes them. A search implies a prying into hidden places for that which is concealed. It is not a search to observe what is in plain view. In Harris v. United States (390 U. S. 234, 236) the United (States Supreme Court said: “ It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.”
*610 In the instant case the revelation of the guns then came not as a consequence of a search incident to an illegal arrest or the exploitation of an illegal arrest but rather as the result of the inadvertent discovery in plain view of the officer.
Coolidge (403 U. S. 443, 471, n. 27, supra) also points out that the issue dealt with therein involved a “ planned warrant-less seizure ”. That footnote states that a planned warrantless seizure on plain-view grounds would be “flatly inconsistent” with the Fourth Amendment. In this case we are dealing not with a planned warrantless seizure but with a completely unexpected and inadvertent one. Were it otherwise, I would not hesitate to set aside even a “ plain view ” seizure.
The GooUdge footnote emphasizes the good faith requirement necessary to support police conduct of the nature discussed herein. In this case police communications broadcasted a bulletin upon receiving the report that a robbery had taken place. Officer Kozens responded to the radio dispatch, halted the vehicle proceeding from the direction known to him to be the area wherein the felony had been committed, and arrested the occupants of the vehicle, one of whom matched the description transmitted. On these facts, there is not the slightest suggestion of lack of good faith.
The court does not intend to legitimize a police technique whereby a police officer would be induced to act on what he thought was evidence of probable cause where the directions to him were, by artifice, false and misleading. I decide only that if he in good faith believes that his instructions from other officers direct an arrest, he may assume probable cause and effect an apprehension. This does not legitimatize the arrest or authorize any search incident thereto. It merely supplies a legal justification for him to be where he was at the time the object was observed in plain view.
I further find that the police, upon receiving the report that a robbery had taken place, had sufficient probable cause to transmit the initial alarm; that the information transmitted therein and received by Kozens was reasonably accurate under the circumstances, and that there was probable cause to arrest the occupants of the vehicle that the officer stopped and to search the car for guns and stolen money. The case herein is inapposite to Whiteley, since the seizure of the subject property was made with both ‘‘ plain view ’ ’ and ‘1 incidental search ’ ’ justification, as distinguished from the Whiteley search which was incidental to an illegal arrest.
*611 Accordingly, it is the decision of1 the court that defendants’ motion .be granted to the extent that testimony as to their respective statements shall be suppressed as evidence and the motion is denied in all other respects.