UNITED STATES of America ex rel. Tecumseh ROBINSON, Relator,

v.

Edward M. FAY, as Warden of Green Haven Prison, Stormville, New York, Respondent.

United States District Court
S. D. New York.
March 5, 1965.

Tecumseh Robinson, pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, by Mortimer Sattler, Asst. Atty. Gen., for respondent.

TYLER, District Judge.

On January 31, 1962, Tecumseh Robinson was sentenced after trial to state prison as a second felony offender for a term of three and one-half to four years for criminal possession of a pistol. He here seeks habeas corpus relief upon the general ground that his Fourth Amendment rights were violated in his state court proceedings.

The facts underlying Robinson's arrest were fully developed at a proceeding before Mr. Justice Sarafite of the

Supreme Court of New York, New York County, which served the dual function of a hearing on a motion to suppress and a trial without a jury, and are essentially undisputed here.

At about 6:30 a. m. on Sunday morning, July 23, 1961, Robinson was seen walking along Lenox Avenue in upper Manhattan by police officer Silas Bartley who was on uniformed patrol in the area. Approximately ten minutes later, Officer Bartley spotted Robinson again, this time accompanied by another man, Clinton Johnson. The two men, in the prime of life and above average size, were walking slowly down the sidewalk, pausing to look around, peering into store windows and then into the street, and continuing down the avenue. Robinson was carrying a brown paper bag in his left hand. Officer Bartley crossed Lenox Avenue to the side on which the two men were walking, approached them, and asked Robinson what he was doing in the neighborhood and what was in the bag. Without answering, Robinson made a rapid thrust toward the bag with his right hand, as if to remove some object therefrom. Uncertain of the contents of the bag, and admittedly apprehensive of his own safety, Bartley quickly reacted to this sudden movement by commencing to draw his service revolver from its holster. Before the gun had completely cleared the holster, however, the bag Robinson had been holding fell to the sidewalk directly at Robinson's feet.[1] With his gun now trained on the two men, Bartley ordered them to back up against the wall and then bent down, picked up the bag, opened it and found the pistol contained in the bag. At this point, he told the men that they were under arrest. Thereafter, Robinson was

taken to the nearest precinct headquarters, questioned and "booked".

At the conclusion of the hearing and trial, the motion to suppress, based upon a claim of unreasonable search and seizure, was denied, and Robinson was found guilty as charged under Penal Law, § 1897. His conviction was subsequently affirmed without opinions by the Appellate Division, First Department, and the Court of Appeals of New York.[2]

Assuming without discussion that Robinson practically, if not technically, has exhausted his state remedies, see Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), I turn to the merits, and, in so doing, I determine that no evidentiary hearing is necessary because the facts were thoroughly explored before Mr. Justice Sarafite and, in any event, are not in significant dispute. In short, the problem is legal in nature—peculiarly so here because I am unclear as to the reasoning followed by particularly the New York State appellate courts in concluding that Robinson's federally protected rights had not been violated on the Sunday morning in question.

It is clear, however, that Robinson, ably assisted by counsel, early and unmistakably raised the issue of his Fourth Amendment rights. The trial judge entered no formal findings and conclusions on this issue. He did say on the record, however, that upon balancing the rights of the accused against the duties and prerogatives of the police, " * * * I do not believe that the officer exceeded his authority, or that he violated any of the defendant's rights."

But for one difficulty to be discussed hereinafter, this simple conclusion, articulated as it was by a notably able and experienced trial judge, might be sufficient to express the correct result

---

1. There was some confusion in Bartley's testimony at the hearing as to whether Robinson actually threw the bag down or simply dropped it. As I view this rapid sequence of events, however, this is a largely insignificant distinction—i. e. whether he dropped the bag or threw it

down, Robinson necessarily was reacting to the movements of Officer Bartley.

2. The hearing and trial and, of course, all state appellate proceedings took place after the decision of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (June 19, 1961).

and thus to dispose of this habeas corpus petition. The difficulty arises from the undeniable circumstance that both before the trial court and upon appeal, the District Attorney advanced as the main argument for the People that Robinson "abandoned" the paper sack and its contents—i. e. that thus there was no search and seizure in the legal (or illegal) sense but merely simple and proper inspection of the bag and its contents by Officer Bartley after Robinson had divested himself of control thereof. See Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).[3]

█ If it be assumed that the New York courts grounded their denial of Robinson's motion to suppress upon this abandonment theory, then I find myself in respectful disagreement. This is so simply because, in my view, this theory upon any realistic appraisal does not fit the flashing sequence of events consisting essentially of Robinson's sudden move of his right hand toward the bag, Bartley's responsive grasp of his service revolver and Robinson's resultant dropping or throwing down of the bag. In short, can it be said as a practical matter under these circumstances that Robinson "abandoned" the bag? I think not.

No lawyer needs citations to support the proposition that the word "abandonment", though it has differing meanings in various substantive niches of the law, consistently includes a significant dollop of "voluntary relinquishment". Tecumseh Robinson cannot be said to have voluntarily relinquished his paper sack on Lenox Avenue in the face of a resolute police officer reaching for his service pistol.

But it is possible that the New York courts *sub silentio* rejected this principal "abandonment" argument of the People and relied upon different reasoning to hold that Robinson's Fourth Amendment rights were not violated. A more recent decision of the Court of Appeals of New York, for example, has sustained the constitutional validity of "search and seizure" under somewhat similar circumstances to those in this case. People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32 (1964). There the court found a reasonable detention and interrogation of the defendant by New York City police officers coupled with a light frisking of defendant's outer clothing which revealed therein a loaded revolver. It was this weapon which brought about Rivera's arrest and conviction for criminally carrying and possessing the same. The majority of the court, upon reasoning not totally unlike that of Mr. Justice Sarafite in this case, upheld the denial of defendant's motion to suppress and his conviction, saying in part that the frisk was "* * * a reasonable and constitutionally permissible precaution * * *" to minimize the attendant hazards faced by patrolmen in doing their duty in the streets of a large urban center. Supra, 14 N.Y.2d at page 446, 252 N.Y.S.2d at pages 462–463, 201 N.E.2d at page 35.[4]

█ A not insubstantial argument can be made for the proposition that, upon the facts in that case, the majority opinion in Rivera is at odds with the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). See dissenting opinion of Judge Fuld in People v. Rivera, supra, 14 N.Y.2d at page 448, 252 N.Y.S.2d at page 464, 201 N.E.2d at page 36. Interesting as it would be to develop the merits of this particular argument, such an exercise would be

3. Indeed, this is the only argument here advanced by the Attorney General of the State of New York to support the judgment of conviction.

4. Rivera's search and arrest took place on May 25, 1962—a date prior to the enactment of New York's popularly styled "stop and frisk" statute, New York Code of Criminal Procedure, Section 180-a, as the Court of Appeals specifically recognized in its opinion.

largely academic in that the facts here are significantly distinguishable from those in Rivera. Most important among the factual distinctions between the two cases is the swift move which Robinson made with his right hand toward the paper sack. This movement was the capstone on a pyramid of circumstances which, in my opinion, was a basis for (1) statutory authority to arrest and (2) probable cause to search Robinson.

As is frequently so in such inquiries, the usual legal pigeon holes do not easily open themselves to the events of the Sunday morning in question, particularly inasmuch as a strong argument, to say the least, can be made that Officer Bartley did not have probable cause to arrest Robinson as he crossed Lenox Avenue or to search the latter's person or package.[5] Robinson's swift move toward the paper bag tipped the scales, simply because that event reasonably caused Bartley to believe that he was witnessing a crime in his presence, specifically, an assault or attempted assault on his own person.

■ It could be suggested, perhaps, that Robinson's movement was for innocent purposes or, more precisely, that Bartley had no compelling reason to assume that it was not. The preceding events as observed by Bartley, the time and the place, however, were such as to dispel any reasonable validity to such a suggestion. In short, no experienced patrolman in a metropolitan area could sensibly afford not to look to his own safety in such a situation, and so it was that Bartley reacted by reaching for his gun and in effect placing Robinson and Johnson in a state of arrest as he did so.[6]

In so viewing the matter, I look, of course, to the New York arrest statute as in effect in July, 1961, Section 177 of the New York Code of Criminal Procedure (as amended by Chapter 706, Laws of 1958), particularly subdivision 1 thereof.[7] It is, of course, true that it was not until two years later that the New York legislature amended subdivision 1 to add express permission for an arrest without a warrant where the arresting officer "has reasonable grounds for believing that a crime is being committed" in his presence.[8] The legislative history of this amendment, however, reveals an intent simply to make the authority for misdemeanor arrests without a warrant coextensive with existing authority for felony arrests without a warrant. See Memorandum of Legislative Representative of the City of New York, McKinney's 1963 Session Laws of New York, at page 1983; Message of the Governor dated April 23, 1963 approving Chapter 580 amending Section 177, ibid., at page 2060; see also generally, Brinegar v. United States, 338 U.S. 160, at page 175, 69 S.Ct. 1302, page 1310, 93 L.Ed. 1879 (1949). In short, the arrest by Officer Bartley, predicated upon a reasonable belief that Robinson was committing or attempting to commit a felony in his presence, was substantially consonant with the thrust of subdivision 1 of Section 177, as in effect on July 23, 1961.

■ The remaining part of the problem, of course, is whether the search of the bag after it was dropped by Robinson was reasonable and within the Fourth Amendment mandate of probable cause. Instinctive as Bartley's move toward his service revolver may have been, it was

---

5. As Bartley frankly conceded, he suspected, in starting across the street, that Robinson and Johnson might be narcotic offenders.

6. It is true that Bartley did not announce to Robinson and Johnson that they were under arrest until after he had discovered the weapon in the bag. But as already suggested, I view this as a formal articulation of an event which, legally and practically, had occurred before the search.

7. Subdivision 1, as it read in July, 1961, provided:
    "A peace officer may, without a warrant, arrest a person,
    "1. For a crime committed or attempted in his presence; * * *"

8. Laws of 1963, Chapter 580, effective July 1, 1963.

certainly the ancient instinct of a peace officer to bring the apparent transgressor to stand—i. e. to place him in an effective state of arrest. Whatever may have been Bartley's intentions prior to the movement of Robinson's right hand, the latter event effectively excised from the officer's mind any possible pretext or purpose to search for evidence to justify an arrest. In brief, the relator's action removed any conceivable purpose Bartley may have had to search first and arrest later; thus, though no reported case precisely in point has been cited to or located by me, I conclude that the aforementioned "flashing sequence of events" gave rise to a proper search "incidental to a lawful arrest".

 That would be all there is to say on the matter were it not for the argument in relator's unusually well-reasoned petition that the constitutional infirmity of the proceedings is demonstrated by the fact, clearly beyond dispute, that he was not arrested and convicted for either the crime of assault or attempted assault or, indeed, for possession of narcotics, the offense which Bartley originally suspected. But a search is "not invalidated because it revealed an additional and different offense, i. e. the carrying of a dangerous weapon * * *" United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. decided February 23, 1965); Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), nor is the prosecution precluded from charging a crime wholly different from that originally contemplated by the arresting and searching officer as the search commenced. See People v. Roach, 44 Misc.2d 40, 253 N.Y.S.2d 24, 25–26 (Sup. Ct. of N.Y., Kings Co., 1964).

The petition is denied. Since it appears, however, that time may be of the essence is that relator's present sentence presumably will terminate in a few months, a certificate of probable cause and leave to appeal in *forma pauperis* are granted sua sponte by this court. Further, it is directed that Mar-

vin Segal, Esq. of New York City be assigned to assist in perfecting an appeal by relator, assuming he wishes to take such, from this ruling.

It is so ordered.