James D. GULLETT, Appellant,

v.

UNITED STATES of America,
Appellee.

Delmar R. WARNER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18890, 18898.

United States Court of Appeals
Eighth Circuit.

Dec. 27, 1967.

---

Sam F. Hamra, Jr., Springfield, Mo., for appellant, James D. Gullett.

Rolland L. Comstock, Springfield, Mo., for appellant, Delmar R. Warner.

Anthony P. Nugent, Jr., Asst. U. S. Atty. for Western District of Missouri, for appellee; Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., and Bruce C. Houdek, Asst. U. S. Atty., on brief.

Before VOGEL, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

VOGEL, Chief Judge.

These are consolidated appeals from judgments of conviction entered June 8, 1967, based upon jury verdicts finding both defendant Gullett and defendant Warner guilty of violating 15 U.S.C.A. § 902(g), which proscribes interstate transportation of stolen firearms, and finding defendant Gullett guilty of violating 15 U.S.C.A. § 902(e), which proscribes interstate transportation of a firearm by one convicted of a crime punishable by imprisonment for over one year.

The claims of error herein arise out of the arrest of the two defendants and the trial court's denial of their motions to suppress evidence seized at the time of arrest.

■■ The arrest of the defendants occurred on a public highway in Missouri, without warrant, and by members of the Missouri State Highway Patrol. The Patrol has the power of investigation, arrest, search and seizure on Missouri highways. §§ 43.180, 43.200 V.A.M.S. Rodgers v. United States, 8 Cir., 1966, 362 F.2d 358, 361, certiorari denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454.[1]

Both defendants made motions to suppress certain evidence obtained by the Highway Patrolmen at the time they were stopped and arrested.

A review of the testimony taken at the hearings on the motions reveals the following: On May 31, 1966, at about noon, three young men, two of them being defendants Gullett and Warner, and a young woman stopped at a tire shop in Lebanon, Missouri. The operator of the tire shop sold them one tire for $7.50, which defendant Gullett paid for in change, mostly quarters. (Gullett claims that they purchased two tires but concedes he paid for one of them with coins.) One member of the party attempted to sell the operator of the tire store cigarettes but the latter declined, although it was indicated that they had different brands of cigarettes for sale. After the party left at approximately 1:00 p. m., the tire shop operator called his son, the Lebanon police chief, and told him that the occupants of a gray 1955 Buick had paid for a tire with quarters and had offered to sell him cigarettes. He also described the number of people in the car and gave the police chief the license number thereof. The information was passed out by the Highway Patrol Communica-

---

1. The fact that evidence was obtained by state officers and is now being used in a federal prosecution is, of course, immaterial, provided the obtaining of the evidence was not in violation of the defendants' immunity from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States. Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669.

tions Division in Rolla, Missouri, at about 1:15 p. m. The radio operator testified:

"Q. And what was the content of that?

"A. They radioed our office information, Gray 1955 or '56 Buick, Ohio BD345, stated it left Lebanon on Highway 66, occupant trying to sell a quantity of cigarettes. They had purchased tires, using quarters, and left about one p. m. It was occupied by, they stated, three boys and one girl."

Sergeant Claud Arnold of the Missouri Highway Patrol called in at 1:21 p. m., advising that he had located the car near Conway. Arnold, together with Sergeant Wilson, also of the Highway Patrol, approached the car and by signal got its driver to pull to the side of the road, where it stopped. According to Sergeant Arnold, defendant Warner was the driver of the car. Arnold asked him for his driver's license, which Warner did not produce. Arnold then asked for proof of ownership of the car and was told that it belonged to James Gullett, who was in the back seat. Defendant Gullett went through his billfold and produced three papers which tended to prove ownership of three cars other than the 1955 gray Buick. The three men occupants were thereupon ordered out of the car and told they were under arrest "for investigation of car theft".

After the defendants had been told they were under arrest, Sergeant Arnold asked them to open the car trunk. This the defendant Gullett did without objection. The trunk appeared full of luggage, clothing, cigarettes and a gun or guns protruding from a wrapped coat. Search of the trunk disclosed three rifles. Two pistols were found in the car, one under a pillow and the other behind the back seat. In addition, the officers found between 30 and 40 cartons of cigarettes and several loose packages.

Prior thereto information had been received by the patrolmen of various burglaries, break-ins and other crimes in the area with quantities of cigarettes taken, as well as change from coin machines.

The trial court, after an extensive hearing, denied the motions to suppress the evidence and return the property seized.

In denying the motions, the trial court held that the evidence seized was not tainted by an illegal search. This court must affirm that finding provided it is based on substantial evidence and no clear error appears. Miller v. United States, 8 Cir., 1966, 354 F.2d 801, 808. Any question involved in the credibility of witnesses was for the determination of the trial judge and will not be reconsidered by this court on appeal. Miller v. United States, supra, at page 801; United States v. Gorman, 2 Cir., 1965, 355 F.2d 151, 154, certiorari denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027; United States v. Vita, 2 Cir., 1961, 294 F.2d 524, 528, certiorari denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788.

Whether there was a constitutionally valid arrest here depends of course upon whether the patrolmen had probable cause therefor. Were they, at the time they advised the four persons who had been in the Buick that they were under arrest, possessed of facts and knowledge of circumstances sufficient to warrant a reasonable person in believing that the defendants had committed or were committing a crime? Beck v. State of Ohio, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142; Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134.

It is the defendants' contention that the arrest here occurred the moment their movement upon the highway was interrupted and restricted by the patrolmen. In assessing what the officers knew, or had reasonable grounds for believing at that time, they point out that it consisted only of the fact that the occupants of this car had purchased a tire, paying for it in quarters, and that they had offered to sell cartons of cigarettes. The trial court's determination that the arrest was made subsequently when the defendants were told by the officers that they were under arrest "for investigation

of car theft" is supported by substantial testimony and will not be disturbed by this court. A like contention was made by the defendant in Rodgers v. United States, supra, wherein Judge Blackmun stated for this court, at page 362 of 362 F.2d:

"The defense asserts basically, however, that the arrest was premature; that it took place the moment the defendant was stopped and his journey interrupted; and that at that moment there was no probable cause to effect an arrest. It is true that, in one sense of the word, Rodgers was then 'arrested', that is, slowed and halted in his progress down the highway, but this is not the arrest by police action which brings into play all the requirements of probable cause.

"The highway patrol troopers were merely making a check of this white Buick which corresponded with the vehicle reported to them as stolen. They were well within their rights and, indeed, their duty, in so doing. Even a routine license check and its concomitant temporary delay of a driver, where there is nothing arbitrary or harassing present, do not constitute an arrest in the legal sense. D'Argento v. United States, 353 F.2d 327, 334 (9 Cir. 1965); Lipton v. United States, supra, p. 593 of 348 F.2d [591]. See Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960)."

The testimony of what transpired after the car was stopped involves some contradiction. These defendants claim that the third male occupant of the car, Sparks, was driving. The patrolmen each testified that defendant Warner was driving the car. Regardless of who was driving, such person was unable to produce a driver's license, a violation of Missouri law, V.A.M.S. § 302.181(2). When, thereafter, asked to produce registration or proof of ownership of the car being driven, the driver stated that defendant Gullett owned the car. Gullett testified during the hearing on the motions to suppress that he did produce proper registration for the automobile. The patrolmen testified that defendant Gullett did not produce proper registration for the automobile but did produce three different titles for cars other than the gray 1955 Buick which he claimed to own. (These three titles were retained by the patrolmen and introduced as exhibits at the hearing and trial.) It was at this point that the patrolmen claim that the defendants were formally advised that they were under arrest "for investigation of car theft". Defendant Gullett denies ever being so informed. A resolution of the factual disputes involved a finding of credibility, one strictly for the trial court's determination. We take it, then, as established that when the car was stopped the defendants were unable, upon request, to produce registration for the car, that the driver had no driver's license, that they did produce three car titles for cars other than the one they were driving, and that they were then formally advised of their arrest.

■  Defendants in this court make much of the fact that they were arrested for car theft but not tried on that offense. We consider the point irrelevant. A search is not invalidated because it reveals an additional and different offense. United States ex rel. Boucher v. Reincke, 2 Cir., 1965, 341 F.2d 977, 980; United States ex rel. Robinson v. Fay, S.D.N.Y.1965, 239 F.Supp. 132, 137, certiorari denied, Robinson v. New York, 382 U.S. 998, 86 S.Ct. 587, 15 L.Ed.2d 485; Dupree v. United States, 8 Cir., 1967, 380 F.2d 233, at page 235, n. 1; Cook v. United States, 10 Cir., 1965, 346 F.2d 563.

We find here that the arresting officers had, at the time of the arrest, the following information: (1) The defendants had purchased a tire or tires, paying at least $7.50 in quarters therefor; (2) the defendants had attempted to sell a quantity of cigarettes, indicating that they had different brands for sale; (3) the driver of the automobile had no driver's license which could be produced; (4) defendant Gullett claimed to be the

owner of the automobile; when asked to produce proof thereof he got from his wallet three different documents indicating ownership of three automobiles other than the Buick they were driving; (5) cartons of cigarettes were observed in the automobile; (6) the officers were aware of recent burglaries in the vicinity where cigarettes and coins were taken.

■ We find in these facts and circumstances ample support for the existence of probable cause for a warrantless arrest. As the Supreme Court stated in Brinegar v. United States, 1944, 338 U.S. 160, at 176, 69 S.Ct. 1302, at 1311, 93 L.Ed. 1879, and restated in Beck v. State of Ohio, 1964, 379 U.S. 89, at 91, 85 S.Ct. 223, 13 L.Ed.2d 142:

" * * * The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

We believe the factors listed supra "would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. State of Ohio, 1964, 379 U.S. 89, 96, 85 S.Ct. 223, 228; Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134; Rodgers v. United States, supra. As well stated by the trial judge herein:

" * * * It seems most obvious that the arrest of the defendant who was driving the car in the presence of the officers and who had no driver's license was a lawful arrest without a warrant under Missouri law. This conclusion, the Court feels, is sufficient in itself to justify the search which was made. However, it also seems obvious that the fact that the officers knew that a felony had recently been committed, coupled with the suspicious transaction of the defendants in Lebanon (reported by an observing citizen doing his duty in a manner all citizens are urged to do), fully justified the officers in stopping this automobile and arresting the occupants, even if the driver had had a proper driver's license. * * * "

Cf. United States v. Owens, 7 Cir., 1965, 346 F.2d 329, 331–332, certiorari denied, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119.

■ Defendants here contend, further, that even if the arrest was lawful, yet the evidence seized is illegal because the search of the car's trunk was an unreasonable search in that it was not properly an incident to the arrest. Defendants concede that the search of the trunk was contemporaneous with the arrest but they argue that since the three men arrested were outside the car and within the control of the patrolmen, there was no necessity for a warrantless search of the trunk or car. They conclude that since the validity of an incidental search and seizure is based upon necessity, the search here was not a valid, incidental search and seizure. The immediate answer is provided by the court in United States v. Gorman, supra, 355 F.2d 151, certiorari denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027, where it was stated at page 155 of 355 F.2d:

" * * * The rule that officers making a valid arrest of one or more occupants of an automobile can, without a warrant, then and there search the car including the trunk is reasonable not only because of necessity in many cases but because a speedy search may disclose information useful in tracking down accomplices still on the move."

Defendants place substantial reliance on the Supreme Court case of Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Preston affords no relief for the defendants herein. Therein, Mr. Justice Black stated at page 367 of 376 U.S., at page 883 of 84 S.Ct.:

" * * * Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused

for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [,34 S.Ct. 341, 344, 58 L.Ed. 652] (1914). Agnello v. United States, 269 U.S. 20, 30 [, 46 S.Ct. 4, 5, 70 L.Ed. 145] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S. [132,] at 158, [45 S.Ct. 280 at 287, 69 L.Ed. 543,] and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30 [46 S.Ct. 4 at 5;] Marron v. United States, 275 U.S. 192, 199 [, 48 S.Ct. 74, 77, 72 L.Ed. 231] (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62 [, 70 S.Ct. 430, 433, 94 L.Ed. 653] (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. *But these justifications are absent where a search is remote in time or place from the arrest.* Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." (Emphasis supplied.)

And at page 368, 84 S.Ct. at page 883:

" * * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage."

It will be noted that the absence of justification is phrased in terms of time and place. This is exemplified by the 1965 decision of James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30, where the court stated that a search "can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." The facts in the instant case fit precisely within *Preston* and *James* because the search occurred at the time and place of the arrest.

 Concluding, we believe that every justification for an incidental search following a lawful arrest was present here. It was contemporaneous with the arrest and it was at the same place of the arrest. The Fourth Amendment proscribes only unreasonable searches; this was a reasonable search.

Affirmed.