**UNITED STATES of America**
v.
**Marion C. NUGENT et al.**
**Crim. No. 74-164.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Feb. 26, 1975.

Don Carroll, Dist. Atty., Fifth Judicial District, Oak Grove, La., for State of Louisiana.

Donald E. Walter, U. S. Atty., and D. H. Perkins, Asst. U. S. Atty., Shreveport, La., for United States.

George M. Snellings Jr., Snellings, Breard, Sartor, Shafto & Inabnett, Monroe, La., for Nugent, Weinberg, Rizzo and Cernigliaro.

Joe D. Guerriero, Monroe, La., for Henry.

## RULING ON MOTION

STAGG, District Judge.

On the night of May 3, 1974, agents of the Federal Bureau of Investigation, acting in concert with members of the Louisiana State Police, conducted a raid of the Forrest Club[1] during which numerous items of gambling paraphernalia were seized. As a result of the investigation, which culminated in the raid, five men were indicted by a federal grand jury on racketeering charges for conducting an illegal gambling business in violation of 18 U.S.C. § 1955.[2]

In due course these defendants were brought to trial and the seized items were introduced into evidence. After three days of trial and several hours of deliberation, the jury was unable to agree on a verdict and the Court declared a mistrial. Thereafter, on the motion of defense counsel, a directed verdict of acquittal was entered by the Court as to each defendant.[3]

At the conclusion of the trial, the United States Marshal was ordered to return several of the seized items to their respective owners but other items remained in the custody of the Marshal. On January 13, 1975, an *ex parte* motion was filed on behalf of the defendants wherein it was requested that the Marshal be directed to return the remainder of the seized items. On the same day this Court granted the *ex parte* motion and ordered the Marshal to return all of the remaining items, including dice table, blackjack table, other equipment and cash. On the following day, January 14, 1975, the new District Attorney of Richland Parish asked that the Court reconsider its order of the previous day in view of his stated intention to prosecute the defendants for violations of Louisiana gambling statutes. Determining the *ex parte* motion to have been improvidently granted, the order of January 13 was promptly recalled and the Marshal was instructed to maintain the status quo pending a hearing to be called on the issue of the return of the seized evidence. This hearing was conducted on January 20, 1975, and briefs were submitted by the defendants and the District Attorney of Richland Parish.

Subsequent to the termination of the federal trial proceedings and the January 20 motion hearing, arrest warrants were issued against the defendants in the name of the State of Louisiana, charging them with illegal gambling operations. Subpoenas and subpoenas *duces tecum* have been issued to the

---

1. The Forrest Club is situated in Richland Parish, Louisiana, approximately 11 miles from the City of Monroe, Louisiana.

2. The five men indicted were Marion C. Nugent, Charles Weinberg, Sam P. Rizzo, Peter D. Cernigliaro and John H. Henry Jr.

3. The judgment of acquittal rendered on December 31, 1974, stated:

 "The government readily proved that Nugent, Weinberg, Rizzo and Cernigliaro were operating an illegal gambling business together and that the business met the specifications of the statutes. The proof, however, was lacking with regard to defendant John H. Henry.

 \* \* \* \* \*

 "To establish its case it was critical that the government prove that the business ' \* \* \* involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business; \* \* \*' (18 U.S.C. 1955)."

F.B.I. agent in charge of the investigation concerning the federal offense, and the Deputy United States Marshal who is in custody of the seized items, requesting that the evidence seized in the raid on the Forrest Club (including all gambling equipment) be brought to the Richland Parish Grand Jury for its scrutiny in connection with the state charges.

The explicit decision required in this case is to answer the question: Should the legally seized gambling equipment held in the custody of the United States Marshal be released to the District Attorney of Richland Parish to be used in a state prosecution following the acquittal of the defendants in their federal trial under 18 U.S.C. § 1955? [4]

The state seeks the seized items to use in connection with its illegal gambling prosecution; not to charge the defendants with the possession of such items.[5] This Court felt that during the federal prosecution it was proved beyond all possible doubt that blatant gambling operations were being conducted in the Forrest Club. In fact, on several occasions defense counsel admitted that the conduct of the defendants constituted a violation of Louisiana gambling statutes.

 The legislative history of 18 U.S.C. § 1955 indicates Congress' intention to place in the hands of the prosecutor a weapon with which to attack the corruption of local law enforcement personnel and public officials by persons involved in illegal gambling operations. In the section analysis of the Organized Crime Control Act of 1970, it is stated:

"* * * The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern, and those corrupt State and local officials who make it possible for them to function." H.R. Rep. No. 91–1549, 91st Cong. 2d Session (1970), U.S.Code Cong. & Admin. News, p. 4029.

The first witness in the federal prosecution was Harold L. Robbins, a Special Agent with the F.B.I. In answering questions about his first encounter with defendant Nugent, Agent Robbins testified that he asked Nugent if there "was any trouble with the local Sheriff", to which Nugent replied, "No, we are two hundred per cent." (Transcript of Agent Robbins' testimony, page 8.) To this Court, the quoted language of Nugent's reply can bear but one connotation—pay-off of local law enforcement officials. In light of this testimony and the admitted gambling activities being conducted at the Forrest Club, this Court is convinced that the seized property should be released to the local prosecutor for his use in the state proceedings. To do otherwise would frustrate the expressed intent of Congress and would condone what this Court finds to be patently offensive.

It cannot be gainsaid that the State of Louisiana has an interest in protecting its public morals and the peace and dignity of the State and its citizens and all who reside in it. Accordingly, the District Attorney of the Fifth Judicial District has found that the duty imposed upon him by the Constitution and laws of the State of Louisiana requires him to prosecute these offenders.

---

4. The Court is not here faced with an illegal seizure problem. The search of the Forrest Club and the resulting seizures were carried out pursuant to a search warrant, the validity of which has not been contested.

5. LSA–R.S. 14:90 provides:
 "§ 90 Gambling.
 "Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
 "Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both. Amended by Acts 1968, No. 647, § 1, emerg. eff. July 20, 1968, at 1:30 P.M."

The search warrant executed by the Federal Magistrate and authorizing the search of the Forrest Club contained the following language:

"There is now being concealed certain property namely, but not limited to, poker chips, checks, check stubs, tabulation sheets, financial statements, money orders, receipts, I.O.U.'s, telephone number and address books, notebooks, U.S. currency and other equipment which are relative to the operation of a gambling business and which are designed or intended for use and have been used as a means of committing a criminal offense, or the fruits of such offense, and constitute evidence of such offense, in violation of the laws of the United States, that is to say, the operation of an illegal gambling business, which is operating in violation of LA.R.S. Section 14:90, \* \* \*."

Thus the initial seizure was effected, for one thing, because the operations at the Forrest Club were believed to be in violation of the Louisiana Law pursuant to which the State now seeks to prosecute.

The proceeding presently before the Court is unusual. Normally evidence is exchanged as a matter of accommodation between federal and state law enforcement officials. However, in the case *sub judice* this procedure has been challenged.

Neither party has cited any legal authority to either sustain or condemn the free exchange of evidence between state and federal law enforcement officials. Nevertheless, such authority does exist. In Gullett v. United States, 387 F.2d 307 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968), state officials, acting on certain information they had received, stopped the car in which Gullett was a passenger and conducted a thorough search. The search revealed a number of firearms, therefore federal officials

were called in and the defendant was subsequently convicted on federal charges of interstate transportation of stolen firearms. The implicit holding of this case is that evidence legally obtained by one police agency may be made available to other such agencies, without a warrant being obtained by the other agency, even for a use different from that for which the evidence was originally taken.[6] In a footnote in the *Gullett* case, the Court stated:

"The fact that evidence was obtained by state officers and is now being used in a federal prosecution is, of course, immaterial, provided the obtaining of the evidence was not in violation of the defendants' immunity from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States. Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669." 387 F.2d 307, 308, footnote 1.

Furthermore, this Court agrees with the concurrence of Judge Anderson of the Second Circuit in United States v. Birrell, 470 F.2d 113 (1972) wherein he stated:

"There is no reason why evidence which is legitimately in the hands of one state or federal police department cannot be made available to other state or federal law enforcement agencies without a warrant, even if it is to be used for a different purpose. The majority, relying upon Coolidge v. New Hampshire, 403 U.S. 443, 478–481, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), suggests that a second police authority must secure a warrant for its additional 'minor' intrusion. This cited portion of *Coolidge* is a reference to the fact that a warrant is required to search a person's home, even if he is arrested in it without a warrant, but I do not see that this *Coolidge* discussion, or any other case, mandates that interpolice-agency use of evidence be restricted." 470 F.2d 113, 117.

---

6. The state officials arrested the defendants and conducted the search of the car for investigation of car theft.

Since subpoenas have now been issued, the persons holding the evidence are under orders by State law to deliver it up to the proper forum. There is no legal reason why the State laws should not be honored and comity given, since the obtaining of the evidence initially was not done in such a way as to violate the defendants' immunity from unreasonable searches and seizures.

Accordingly, it is ordered that the materials seized from the Forrest Club during the raid conducted on May 3, 1974, and now presently in the custody of the United States Marshal be forthwith delivered to the custody of the Captain-in-Charge, Louisiana State Police Headquarters, Monroe, Louisiana, for use in the State grand jury investigation and prosecution.