# ELMORE GEE *v.* STATE OF MARYLAND

[No. 137, September Term, 1980.]

*Decided October 29, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Claudia A. Cortese, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

Appellant Elmore Gee (Gee) was convicted of grand larceny in the Circuit Court for Prince George's County. His conviction was affirmed by the Court of Special Appeals in an unreported opinion (*Gee v. State,* No. 97, Sept. Term, 1980, decided September 26, 1980). We granted Gee's petition for certiorari to review the question: "Did the court below err in admitting into evidence the products of an illegal search and seizure of petitioner's wallet?" Gee contends that his Fourth Amendment rights were violated: (1) by the initial search of his wallet by officers of the Metropolitan (District of Columbia) Police Department; and (2) by a subsequent examination by an officer of the Prince George's County, Maryland, Police Department of the wallet's contents, while they were in the custody of the D.C. police. We do not accept these contentions for the reasons hereinafter set forth.

On August 1, 1978 Officer Stephen M. Shedeck, of the Metropolitan Police Department, and his partner, Officer William S. Welch, were on duty in plain clothes in an unmarked police car. About noon, at 11th and U Streets, they observed a Thunderbird, and a pursuing Chevrolet, run a red light. The officers activated the siren and flashing grill lights on their vehicle and gave chase. The Chevrolet stopped and the officers were advised by its occupants that they had just been "robbed" by the people in the Thunderbird. The police resumed the chase of the Thunderbird which reached speeds of between 75 and 85 mph before it went out of control and struck a brick wall at 11th and Clifton Streets, Northwest. Officer Shedeck went to

the driver's side of the Thunderbird where he observed a wallet lying on the seat of the car between the legs of the driver, who was later identified as the appellant, Elmore Gee. Officer Shedeck took Gee out of the Thunderbird and Officer Welch took care of the passenger. The wallet was left lying on the car seat at this time. Then the persons in the Chevrolet came to the accident scene. One of them told Officer Shedeck that, earlier that morning, Gee and his companion in the Thunderbird had obtained money and food stamps from the complainant by a flim-flam in which Gee had flashed a special policeman's badge in a wallet. Gee and his companion were placed under arrest for grand larceny by trick. Thereupon Officer Shedeck made a search of the Thunderbird and seized a number of items, including the wallet on the front seat. That wallet contained a special policeman's badge and a number of cards. Officer Shedeck, at the scene, went through every card in the wallet, searching for "[n]othing particular." The wallet and its contents were left by Officer Shedeck with Officer Welch while Officer Shedeck took Gee and his companion to the hospital. Several hours later Officer Welch returned custody of the articles to Officer Shedeck, who in turn transferred custody of them to the property custodian of the Metropolitan Police Department.

Previously, on April 28, 1979, Panala Wilson of Prince George's County had been victimized by a flim-flam in which she had been shown a special policeman's badge. Mrs. Wilson gave the police a description of the offenders and the license number of the car which they had used. The trail led to the appellant. It is the theft from Mrs. Wilson which is charged in the instant matter.

On August 3, 1978 a Prince George's County policeman went to the office of the property custodian of the Metropolitan Police Department and there examined Gee's wallet and its contents. That wallet, as well as a special policeman's badge, a business card and certain temporary Maryland driver's licenses which it contained, were introduced in evidence in the instant proceedings after appellant's motion to suppress had been denied.

## I

Appellant does not challenge the validity of the initial seizure of the wallet by the D.C. police. But it is appellant's position that, once the wallet was in the custody of Officer Shedeck, it could not validly be searched absent a warrant, because Gee enjoyed a reasonable expectation of privacy in his wallet, as a container. Appellant relies on *Arkansas v. Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) and *Liichow v. State,* 288 Md. 502, 419 A.2d 1041 (1980). However, we need not decide, under the "container" cases, whether hairs are to be split between holding this claspless wallet in a folded condition and unfolding it to bring the badge in plain view, or between the unfolded wallet and its compartments containing the business card and licenses. This is because the instant case is controlled by *New York v. Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) which was decided after argument in this Court.

*Belton* involved the police stop of a speeding car on the New York Thruway. The policeman smelled marijuana and observed an envelope marked "Supergold," which he associated with marijuana, on the floor of the car. He ordered its four male occupants out of the car and placed them under arrest for unlawful possession. "He patted down each of the men and 'split them up into four separate areas of the Thruway at this time so they would not be in physical touching area of each other.' " *Id.* at 456, 101 S. Ct. at 2862, 69 L. Ed. 2d at 772. Then the policeman searched the passenger compartment of the car. On the back seat he found a leather jacket belonging to Belton. He unzipped one of the pockets of the jacket and discovered cocaine. The Court of Appeals of New York held that the warrantless search of the zippered pockets of the unaccessible jacket violated the Fourth Amendment.[1] The Supreme Court of the United States reversed. It established a "bright line" rule.

In so doing, the Court clarified the application of the rule

---

1. People v. Belton, 50 N.Y.2d 447, 429 N.Y.S.2d 574, 407 N.E.2d 420 (1980).

in *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) to the search of the interior and contents of an automobile incident to the lawful custodial arrest of its recent occupant. It said (453 U.S. at 459-61, 101 S. Ct. at 2864, 69 L. Ed. 2d at 774-75):

> When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary item." *Chimel, supra,* at 763 [, 89 S.Ct. at 2040, 23 L.Ed.2d at 694]. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *United States v. Robinson* [414 U.S. 218, 94

S. Ct. 467, 38 L. Ed. 2d 427], *supra; Draper v. United States,* 358 U.S. 307 [, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)]. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. [Footnotes omitted.]

*Belton* concludes with the following summary (*id.* at 101 S. Ct. at 2865, 69 L. Ed. 2d at 776):

It is not questioned that the respondent was the subject of a lawful custodial arrest on a charge of possessing marihuana. The search of the respondent's jacket followed immediately upon that arrest. The jacket was located inside the passenger compartment of the car in which the respondent had been a passenger just before he was arrested. The jacket was thus within the area which we have concluded was "within the arrestee's immediate control" within the meaning of the *Chimel* case. The search of the jacket, therefore, was a search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments. [Footnote omitted.]

In the instant matter it is not even suggested that Gee's custodial arrest was other than lawful. The search of the passenger compartment of Gee's car was contemporaneous with his arrest. There is no distinction of any legal significance between the zippered pocket of Belton's jacket and Gee's wallet. *Belton* is dispositive.[2] The search of Gee's wallet by the Metropolitan police did not violate the Fourth and Fourteenth Amendments.

---

**2.** Justice Powell, who was with the majority in *Belton,* gives the following rationale for that decision in his opinion concurring in the judgment in the companion case of Robbins v. California, 453 U.S. 420, 430-32, 101 S. Ct. 2841, 2848-49, 69 L. Ed. 2d 744, 753-54 (1981):

## II

Appellant next contends that the Prince George's County police should have first obtained a warrant before inspecting Gee's wallet in the District of Columbia while it was in the custody of the Metropolitan Police Department.[3] Gee reasons that the warrant requirement is the general rule and that there has been no exception to it, which has been recognized by the Supreme Court of the United States, for inter-governmental agency searches and seizures of private yet confiscated property.

In this case Officer Shedeck, incident to Gee's custodial arrest, lawfully searched throughout the entire wallet. The unidentified Prince George's County police officer who subsequently inspected the wallet did no more than what Officer Shedeck had already done. Analogous circumstances were presented in *Walter v. United States,* 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980). There reels of eight millimeter obscene film had been misdelivered to a private party in traditional, securely wrapped, plain packages. That party opened each of the packages which contained individual boxes of film. On the boxes were suggestive drawings and explicit descriptions of the contents. The private party opened several of the boxes and held the film up to the light

---

Any "bright line" rule does involve costs. *Belton* trades marginal privacy of containers within the passenger area of an automobile for protection of the officer and of destructible evidence. The balance of these interests strongly favors the Court's rule. The occupants of an automobile enjoy only a limited *expectation of* privacy in the interior of the automobile itself. This limited interest is diminished further when the occupants are placed under custodial arrest. Immediately preceding the arrest, the passengers have complete control over the entire interior of the automobile, and can place weapons or contraband into pockets or other containers as the officer approaches. Thus, practically speaking, it is difficult to justify varying degrees of protection for the general interior of the car and for the various containers found within. These considerations do not apply to the trunk of the car, which is not within the control of the passengers either immediately before or during the process of arrest. [Citations omitted.]

**3.** The wallet and its contents were brought to the suppression hearing, and the trial which immediately followed, by Officer Shedeck from the property room of the Metropolitan Police Department.

but could not discern the images. After the private party had turned the film over to the FBI, the agents, without a warrant, viewed the films by use of a projector. The judgment in *Walter,* reached without any opinion of the Court, was that the search was invalid. Justice Stevens, however, whose opinion announcing the judgment was joined by Justice Stewart, wrote that "there was nothing wrongful about the Government's acquisition of the packages or its examination of their contents to the extent that they had already been examined by third parties." *Id.* at 656, 100 S. Ct. at 2401, 65 L. Ed. 2d at 417. The four dissenting Justices agreed with the quoted portion of Justice Stevens' opinion. *Id.* at 663, 100 S. Ct. at 2405, 65 L. Ed. 2d at 422.

The clear majority of United States Courts of Appeal have held there to be no constitutional violation under circumstances similar to those presented in the instant matter. Where New Jersey authorities had arrested the defendant for carrying a concealed weapon, the subsequent inspection by a federal agent of money taken from the defendant and held for safekeeping was determined not to require a warrant in *United States v. Jenkins,* 496 F.2d 57 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S. Ct. 1119, 43 L. Ed. 2d 394 (1975). This was so even though the subsequent inspection, which focused on the serial numbers of bills, revealed that it was "bait money" taken in a bank robbery. The court said that "[n]o reasonable expectations of privacy were invaded and no search occurred when the police officers in this case simply looked again at what they had already — lawfully — seen." *Id.* at 74. Where the entry by fire marshals onto premises which were the subject of a suspected arson was justified by exigent circumstances, the subsequent removal of physical evidence of arson by Delaware State Police, acting without a warrant, was valid since no greater invasion of privacy resulted. *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S. Ct. 320, 42 L. Ed. 2d 277 (1974). In *United States v. Grill,* 484 F.2d 990 (5th Cir. 1973), *cert. denied,* 416 U.S. 989, 94 S. Ct. 2396, 40 L. Ed. 2d 767 (1974), a federal agent who had no warrant went into the personal belongings of a federal prisoner being

held awaiting trial in a county jail in Palm Beach, Florida in order to test whether a key taken from the arrestee would fit the lock on a bag of cocaine which had been seized in the Bahamas. In sustaining the search, the court said that the underpinning of the cases which find no constitutional violation is that "the items in question have been exposed to police view under unobjectionable circumstances, so that no reasonable expectation of privacy is breached by an officer's taking a second look at matter with respect to which expectation of privacy already has been at least partially dissipated." *Id.* at 991. *Accord, United States v. Lewis,* 504 F.2d 92 (6th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S. Ct. 1974, 44 L. Ed. 2d 466 (1975); *United States v. Gargotto,* 476 F.2d 1009, 1014 (6th Cir. 1973), *cert. denied,* 421 U.S. 987, 95 S. Ct. 1990, 44 L. Ed. 2d 477 (1975) ("Evidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken."): *Gullett v. United States,* 387 F.2d 307, 308 n.1 (8th Cir. 1967), *cert. denied,* 390 U.S. 1044, 88 S. Ct. 1645, 20 L. Ed. 2d 307 (1968); *United States v. Romero,* 585 F.2d 391, 396 (9th Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S. Ct. 1278, 59 L. Ed. 2d 492 (1979) (" '[E]xamination by another law enforcement agency is not a sufficiently distinct intrusion into the defendants' privacy to trigger the requirements of the Fourth Amendment.' "); *Westover v. United States,* 394 F.2d 164, 165 (9th Cir. 1968) ("[A] search warrant to again look at the money already in police custody does not make sense.").

*United States v. Birrell,* 470 F.2d 113 (2d Cir. 1972), reached a contrary result. There New York City police had seized certain papers of the defendant at a murder scene, the hotel room which had been occupied by the victim. While the defendant's motion for return of the papers was pending, federal authorities reviewed them, *sans* warrant. This led to the federal conviction of the defendant for perjury which *Birrell* reversed. Later cases have either distinguished *Birrell* or declined to follow it. See United States v. FMC Corp., 428 F. Supp. 615, 619 (W.D.N.Y. 1977), *aff'd,* 572 F.2d 902 (2d Cir. 1978) (*Birrell* limited to its facts; defendant

there had strenuously objected to police retention of papers); *United States v. Nugent,* 389 F. Supp. 817, 820 (W.D. La. 1975) (disapproving *Birrell* majority's analysis). *Cf. United States v. Romero, supra,* 585 F.2d at 396.

The state cases seem to be in accord with the general federal rule. For example, in *State v. Gonzales,* 111 Ariz. 38, 523 P.2d 66 (1974), Glendale, Arizona police had arrested the defendant for public drunkenness. When he was booked at the jail, his clothing was taken from him. Several hours later the Glendale police were advised by the Sheriff's office of Maricopa County, Arizona, that the defendant was a suspect in a murder case in Phoenix. The clothing was impounded, subsequently taken by the Maricopa authorities without a warrant and introduced by the state at the murder trial. The court distinguished *Birrell* factually. It was held there was no merit to the defendant's contention that the clothing had been illegally seized when it was made available by the law enforcement officers of one subdivision to those of another. *See also State v. Williams,* 227 So. 2d 331 (Fla. App. 1969); *Capps v. State,* 505 S.W.2d 727 (Tenn. 1974). *Contra, People v. Smith,* 103 Cal. App. 3d 840, 163 Cal. Rptr. 322 (1980).

In accordance with the general rule we hold that the inspection by a Prince George's County policeman of the contents of Gee's wallet while it was in police custody did not require a warrant.

> *Judgment of the Court of Special Appeals affirmed.*
> *Appellant to pay the costs.*